Ranney, J.
An action was brought and recovery had by the defendants in error, in the Commercial Court of Cincinnati, upon the promissory note following:
“ $4,000. Cincinnati, 30th May, 1850.
“ Sixty days after date I promise to pay to the order of Samuel R. Bates, four thousand dollars, value received.
“ George H. Bates.”
Written on the back in the following order:
“B. F. Greenough,
“ Samuel R. Bates,
“Butler & Brother.”
From the bill of exceptions, taken at the trial, it appears that the note was discounted by the defendant in error, after all the names were upon it, for the exclusive benefit of the maker, George H. Bates. On the morning of the day the note matured, George H. Bates died. It was duly presented at his last place of business, and also at his dwelling-house, and payment requested, and notice ofhonpayment immediately given to all the persons appearing upon the 416] back of *the note-as indorsers. The plaintiff’s counsel insist that Greenough was, in fact, and should have been treated by the holders as an original promisor and joint maker of the note with Bates; and, inasmuch as no demand of payment was made upon him, that the indorsers, Samuel R. Bates and Butler & Brother, are discharged from all liability upon it. This is supposed to result from the fact that his name was placed upon the paper before it was indorsed by the payee, and from the position it is there found to occupy.
Notwithstanding the great importance of a definite and uniform rule, fixing the liability incurred by a party to negotiable paper thus situated, a most perplexing contrariety of opinion is found to exist in the reported.cases.
In Massachusetts, and several of the New England states, he is presumed, in the absence of proof of a different intention, to be an original promisor.
The cases will be found collected and ably examined, by J. Hubbard, in the Union Bank of Weymouth v. Willis, 8 Met. 504. In that case A made a note payable tó B, and C put his name in blank on the back of the note. B, the payee, then placed his name in blank, on the back of the note, under that of C.
*418 In this condition, it was discounted by the plaintiff for A, the maker.
It was held that G was an original promisor, and in an action against B, the payee and indorser, the holders wore defeated, because no demand of payment had been made of C. The court regarded itself bound by the previous course of decisions in that state, remarking that if the subject were brought before it for the first time, they “ should say, that a name written on the paper, which Dame was not that of the payee, nor following his name on his having indorsed it, was either of no validity to bind such individual, because the contract intended to be entered into, if any, was incomplete, or within the statute of frauds; or, that he should bo treated by third parties, simply as a second indorser, leaving the *payee and himself to settle their respective liabilties [418 according to their own agreement,”
Whatever may have been the principle upon which the earlier decisions in New York proceeded, the subject has more recently been fully examined by the Supreme Court of that state in the case of Ellis v. Brown, 6 Barb. S. C. 282, and by the court of appeals, in Spies v. Gilmore, 1 Comst. 321, and Hall v. Newcomb, 7 Hill, 416.
These eases seem to affirm that he can only be made liable as a second indorser; that he is within the protection of the statute of iifrauds, and therefore parol evidence is not admissible to show that he intended to bind himself as an original promisor or guarantor That the indorsement is entirely nugatory until the note has been indorsed by the payee, and that he is then to be charged by a subsequent holder only upon due demand of the maker and notice thereof.
In Ohio, the case of Champion & Lathrop v. Griffith, 13 Ohio, 228, followed by Robinson v. Abell, 17 Ohio, 42, has settled that the mere indorsement upon the note, of a stranger’s name in blank, is prima facie evidence of guaranty. That to charge such person as maker there must be proof that his indorsement was made at the time of execution by the other party, or, if afterward, that it was in pursuance of an agreement or intention that he should become responsible from the date of the execution; that such agreement or intention may be proved by parol evidence; and that the rule is the same, whether the instrument is negotiable or not.
The difference amounts to this: in Massachusetts such a party is *419 presumed to be an original promisor; in Ohio he is presumed to be a guarantor; but in either state parol evidence is received to rebut the presumption and show what liability it was intended he should assume, and what relation he should sustain to the paper. In New York he is presumed to have intended to assume the liabilities of an indorser, and parol evidence is not admissible to show a different intention.
419] *We are not disposed to doubt the correctness of the rule laid down in the decisions already made in this state, when confined to the facts of the several cases in which it has been applied. This rule admits parol evidence to ascertain the intention of the parties, and requires us to consider what evidence was before the Commercial Court.
From the bill of exceptions it appears that the note was indorsed by all the parties for the accommodation of" Geo. H. Bates. That Greenough indorsed it before it was filled up; that Geo. II. Bates on the same day filled up the note for $4,000, payable to the order of Samuel E. Bates, whose indorsement he then procured, and subsequently that of Butler & Brother. In this condition ho took it to the defendants in error, and procured it to be discounted. It further appeared from the testimony of Greenough, who was called and examined as a witness for Butler & Brother, that he had been in the habit of exchanging accommodation indorsements with Geo. H. Bates; that Samuel E. Bates had usually been a party to this paper, and that whenever it was intended that he should be the first indorser, his name was used as the payee. That without having any distinct recollection of this particular note, he was able to say from the course of business between them that he intended to authorize Geo. H. Bates to make him appear in any character upon the paper that would best serve the purpose of raising the money. This constituted a general letter of attorney to Bates to bind Greenough in any form he saw fit; but while it obligated Greonough to submit to any obligation that Bates saw fit'to impose upon him, it also entitled him to the full benefit of any arrangement that Bates intended for his benefit. Looking at the transaction fairly, we can not doubt that Bates, the maker, and his brother, the payee, intended to bind him as one of the indorsers of the paper, and to impose upon him all the obligations, and secure him all the privileges of that position ; and that such was the understanding of Butler & Brother is perfectly manifest from the declarations of *420, 421 one of them, made after the note had *been protested, in [420 which he .treated Geo. H. Bates as the solo party primarily liable.
But if this testimony is left entirely out of view, and we • have nothing but the fact that the note was discounted for the sole benefit of the maker, and became first legally operative when received by the defendants in error, we are still brought to the same conclusion.
In the common understanding of business men, it is very seldom supposed, that one placing his name on the back of a note becomes primarily liable for the payment of the debt. > This understanding ought to be no further interfered with than is absol ately necessary to give full effect to the lawful contracts of parties, and afford a remedy to the creditor commensurate with what he may be presumed to have expected when the promise was made. To do this, it is only necessary to give effect to the undertaking of each of the the parties upon the paper, precisely as they appear atthe moment the instrument itself takes effect and becomes legally operative. If he then appears to bo a stranger to the title, he must assume the position and responsibilities of a stranger, and as ho cannot in such case be charged as an indorser, and as it can not be supposed that he did not intend to bind himself in some way, he must be charged as a maker or guarantor. This will happen in all cases where the paper is designed for the payee, and the name of the stranger is put on the back for his security. ' Such were all the cases yet decided in this state. There was no middle course; either the undertaking which the party intended to assume, and upon the faith of which the creditor had parted-with his money or property, must take effect in that manner, or it was nugatory and without any effect whatever.
Nor would his position or responsibilities be changed, although the payee should afterward transfer the obligation. Once impressed with the character of maker or guarantor, they remain the same into whose hands soever it may come.
But the case is widely different when the paper is not designed for the payee, and the arrangement contemplates *his indorse- [421 ment as an accommodation party also, before it is used. In such case, there is no obligation incurred, no contract made, until the note is accepted by the person advancing the consideration upon it. Where it is so accepted, it then, for the first timo, has its effect. It then has the indorsement of the payee, to transfer it to the party *422 whose name is already upon it, evidencing his willingness to receive and transmit the title, and in his turn to assume the responsibility of an indorser when the note shall have accomplished its purpose, by being accepted by the party becoming beneficially entitled thereto. The order of this indorsement, in point of time or locality, is of no importance, but it is controlled wholly by the order contemplated by the contract of indorsement. Chalmers v. McMurdo, 5 Munf. 252. The fact that the party indorsed before the payee, as was well said by Spencer, J., in Herrick v. Carman, 12 I. 161, “ can have no influence, for he must have known, and we are bound to presume that he acted on that knowledge, that, though the first to indorse, his indorsement would be nugatory, unless preceded by that of the payee.”
Two governing principles should be kept constantly in view: 1. That such a construction should be placed upon the contract as will prevent its failure, and will give effect to the obligation of each of the parties appearing upon it at the moment the contract itself takes effect — ut res magis valeat quampereat; 2. Whenever the obligation of a party appearing upon the bacjk of negotiable paper can at that time take effect as an indorsement, it should always bo held to do so, as conforming more nearly to the general intention of the parties assuming that position -upon it.
The first of these principles is disregarded by the jmesent holding of the courts in New York, in treating as nugatory the obligation assumed by a stranger to the paper when it is designed for and received by the payee, and when the name is indorsed to give credit to the paper with him. The last is disregarded in the case cited from Metcalf, in pushing the principle of original liability beyond 422] the necessity of its ^application, and when, at the moment the contract is consummated, the obligation of the party thus situated can and should have effect as an indorsement.
In New York, the present holding is directly opposed to a long series of earlier decisions, as is abundantly proved by the dissenting opinions in Hall v. Newcomb, and Ellis v. Brown, in which the very distinction we have made is recognized and enforced; while in Massachusetts, not one of the numerous cases cited by the court in The Union Bank v. Willis, had carried the principle beyond the liability assumed for the benefit of the payee.
Two states of the ease may be supposed, in neither of which would Smead & Co. be obliged to treat Greenough as an original *423 promisor. If the paper upon its face placed him in that position, yet, if in point of fact the arrangement between the parties was such as to entitle him to the privileges of an indorser, no demand need be made upon him, for the other indorsers, having no recourse against him as maker, could lose nothing for the want of it.
On the other hand, if he appeared to be an indorser, but in fact as between him and the other indorsers he had agreed to assume the responsibilities of maker, yet Smead & Co., having no notion of such an arrangement, would not be bound to regard it.
In our opinion, not only the paper upon its face presented him as an indorser, but the evidence given also comes to the same result, and shows him a joint accommodation indorser with the other parties appearing upon the back of the note; and as such, under the ruling in Douglas v. Waddle, 1 Ohio, 413, liable only for his proper proportion of the debt, as a co-security.
This view of the subject makes it unnecessary to pass upon the question made, as to the sufficiency of the demand. It may not be improper, however, to say, that if Greenough could be treated as a joint maker, we should be of the opinion that the demand made, or rather the excuse for not making a demand, would be insufficient to charge the indorsers.
*The question is not covered by the case of Harris v. Clark, [428 10 Ohio, 5, and we feel no hesitation in saying that the rule there adopted should be confined to the precise state of facts upon which the decision was made. A demand upon one of several partners in business is clearly sufficient, and the court, in that case, considered the several “ makers of a joint and several promissory note in the light of partners in that particular transaction.” But surely the principle could have no application after the death of one of the parties had terminated the implied agency of the survivor; and it could not be deemed duo diligence in the holder to present the note at the residence of the deceased partner, when the survivor was within his reach.
It is also assigned for error, that the court refused to require the plaintiffs to fill up the blank indorsements, upon the trial. In this we think there was no error. When the plaintiffs gave the note in evidence, with the names of all the defendants upon it, they at the same time established the liability of them all, and title in themselves. They were as well entitled to the-legal presumptions and . inferences to be drawn from the face of the paper as they were to *424 what was fully expressed in it. All this belonged to its construction and legal effect, and as they claimed nothing more, there was no occasion for writing out what the law presumed without it. The name of the payee appeared, transferring the title; and while it is true that the precise order in which it had passed to and from the other indorsers, might not be apparent, a sufficient answer is, that that this was wholly immaterial. In no possible case could it defeat the title, or be a defense for any one of them.
If the plaintiffs had endeavored to establish a liability not resulting from a fair construction of the paper itself, there would have been great propriety in compelling them to specify the precise nature of the undertaking, and of confining the evidence to its support ; but when nothing but the legal consequences of the instru424] ment are- invoked, we can %ee no possible benefit to accrue to the defendants from complying with such a demand, unless it should be the very illegitimate advantage arising from the plaintiffs having mistaken their legal rights.
The judgment of the district court is affirmed.